**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


UNITED STATES OF AMERICA,      :
      :
      :
   v.      :
      :  Criminal No.: 2:20-cr-200-RBS
      :
TEVA PHARMACEUTICALS USA,      :
INC. and GLENMARK      :
PHARMACEUTICALS INC., USA      :
      :
          Defendants.


## DEFENDANT GLENMARK PHARMACEUTICALS INC., USA'S
## MOTION FOR MISJOINDER AND SEVERANCE

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

I.   FACTUAL AND PROCEDURAL HISTORY ................................................... 3

II.  LEGAL STANDARD.......................................................................................... 7

   A.   Misjoinder Under Rule 8(b)........................................................................... 7

   B.   Severance Under Rule 14............................................................................... 8

III. ARGUMENT ....................................................................................................... 9

   A.   Count One Was Misjoined with Counts Two and Three in Violation of Rule 8(b) ........... 9

   B.   Glenmark Is Entitled to Severance Under Rule 14....................................... 14

   C.   The Court Should Exercise Its Discretion to Sever Glenmark to Be Tried Alone on Count One ................................................................................ 18

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bruton v. United States*,
    391 U.S. 123 (1968) ................................................................ 18

*Kotteakos v. United States*,
    328 U.S. 750 (1946) ............................................................ 11-12

*SmithKline Corp. v. Eli Lilly & Co.*,
    575 F.2d 1056 (3d Cir. 1978) .................................................... 17

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare
    Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142 (N.D. Cal. 2017) ............. 16-17

*United States v. Adens*,
    No. 12-616, 2015 WL 894205 (E.D. Pa. Feb. 27, 2015) ........................... 8

*United States v. Avila*,
    610 F. Supp. 2d 391 (M.D. Pa. 2009) ......................................... 16

*United States v. Biaggi*,
    705 F. Supp. 852 (S.D.N.Y. 1988) .............................................. 7

*United States v. Boscia*,
    573 F.2d 827 (3d Cir. 1978) ............................................... 2, 18

*United States v. Bradford*,
    487 F. Supp. 1093 (D. Conn. 1980) ............................................ 7

*United States v. Bryant*,
    556 F. Supp. 2d 378 (D.N.J. 2008) ........................................... 15

*United States v. Coleman*,
    22 F.3d 126 (7th Cir. 1994) .................................................. 9

*United States v. Davis*,
    397 F.3d 173 (3d Cir. 2005) .................................................. 2

*United States v. De Larosa*,
    450 F.2d 1057 (3d Cir. 1971) ................................................. 9

*United States v. Dileo*,
    859 F. Supp. 940 (W.D. Pa. 1994) ............................................. 9

*United States v. Dougherty*,
    No. CR 19-64, 2020 WL 6395464 (E.D. Pa. Nov. 2, 2020) ....................... 16

*United States v. Eufrasio*,
    935 F.2d 553 (3d Cir. 1991) ............................................... 2, 9

*United States v. Gatto*,
    746 F. Supp. 432 (D.N.J. 1990) ......................................... 13, 15, 19

*United States v. Gay*,
567 F.2d 916 (9th Cir. 1978) ................................................................ 18

*United States v. Gibbs*,
190 F.3d 188 (3d Cir. 1999) ................................................................. 11

*United States v. Grasso*,
55 F.R.D. 288 (E.D. Pa. 1972) .............................................................. 10

*United States v. Gruttadauria*,
439 F. Supp. 2d 240 (E.D.N.Y. 2006) ................................................. 7-8

*United States v. Harrison*,
No. 3:20-CR-105, 2021 WL 1816895 (S.D. Ohio May 6, 2021) ............ 15

*United States v. Homick-Van Berry*,
No. 04-269 (JBS), 2005 WL 1168398 (D.N.J. May 18, 2005) ............... 12

*United States v. Irizarry*,
341 F.3d 273 (3d Cir. 2003) ................................................................... 7

*United States v. Islam*,
No. 20-cr-00045, 2021 WL 308272 (E.D. Pa. Jan. 29, 2021) ....... 14, 15, 16, 18

*United States v. Lane*,
474 U.S. 438 (1986) ................................................................................ 8

*United States v. Lech,*
161 F.R.D. 255 (S.D.N.Y. 1995) ............................................................ 7

*United States v. Leichter,*
160 F.3d 33 (1st Cir. 1998) .................................................................. 18

*United States v. Marionneaux*,
514 F.2d 1244 (5th Cir. 1975) ............................................................. 13

*United States v. Morris*,
176 F. Supp. 2d 668 (N.D. Tex. 2001) ................................................. 13

*United States v. Potashnik*,
No. 3:07-CR-289-M, 2008 WL 5272807 (N.D. Tex. Dec. 17, 2008) .... 7, 12

*United States v. Sandini*,
888 F.2d 300 (3d Cir. 1989) ............................................................. 17-18

*United States v. Savage*,
Nos. 07-550-03, 07-550-04, 07-550-05, 07-550-06,
2012 WL 6609425 (E.D. Pa. Dec. 19, 2012) (Surrick, J.) ................. 13, 16

*United States v. Somers*,
496 F.2d 723 (3d Cir. 1974) ................................................................... 8

*United States v. Staton*,
Nos. 10-800-01, 10-800-02,
2012 WL 2135512 (E.D. Pa. June 12, 2012) (Surrick, J.) .................. 7, 13

*United States v. Stoecker*,
  920 F. Supp. 876 (N.D. Ill. 1996) ................................................................. 15-16

*United States v. Thompson*,
  219 F. Supp. 3d 502 (M.D. Pa. 2016) ..................................................................... 7

*United States v. Torres*,
  251 F. App'x 763 (3d Cir. 2007) ............................................................................ 9

*United States v. Velasquez*,
  772 F.2d 1348 (7th Cir. 1985) ............................................................................. 11

*United States v. Walker*,
  657 F.3d 160 (3d Cir. 2011) .................................................................................. 8

*United States v. Watson*,
  866 F.2d 381 (11th Cir. 1989) ............................................................................. 13

*United States v. Webb*,
  827 F. Supp. 840 (D. Mass. 1993) ....................................................................... 10

*United States v. Weber*,
  437 F.2d 327 (3d Cir. 1970) .................................................................................. 9

*United States v. Welch*,
  656 F.2d 1039 (5th Cir. 1981) ........................................................................ 8, 11

*Zafiro v. United States*,
  506 U.S. 534 (1993) .............................................................. 8, 14-15, 16, 18

## **Rules**

Fed. R. Crim. P. 8(a) .................................................................................................. 7

Fed. R. Crim. P. 8(b) ....................................................................................... *passim*

Fed. R. Crim. P. 14 .......................................................................................... *passim*

## **Other Authorities**

1A Wright & Leipold, Federal Practice and Procedure (5th ed. 2020) ................................. 8, 12

# **INTRODUCTION**

In its three-count Indictment, the government charged three separate and distinct conspiracies, alleging price fixing of at least ten different medications. Defendant Glenmark Pharmaceuticals Inc., USA ("Glenmark") is charged only in Count One, a single alleged conspiracy involving only one specified medication: pravastatin. Counts Two and Three do not mention Glenmark or pravastatin and instead allege distinct conspiracies involving several other companies and nine different specified medications. Counts Two and Three likewise allege different means and methods and overt acts occurring at different times. The only connection between the three counts is the alleged involvement of Teva Pharmaceuticals USA, Inc. ("Teva"). That is not enough to join these unrelated counts in a single trial.

It is clear from the face of the Second Superseding Indictment ("SSI") that Glenmark has nothing to do with Counts Two or Three. And not surprisingly, given the limited allegations contained in Count One and the more expansive allegations in Counts Two and Three, the vast majority of the more than 24 million documents Glenmark has received from the government to date relate to Counts Two and Three and therefore have nothing to do with the charge that Glenmark faces. In fact, by the government's own representations, and as is clear from the identity of the third parties that produced the documents to the government, less than fifteen percent of the more than 24 million documents are relevant to Count One.

It would be unduly burdensome and prejudicial to subject Glenmark to a joint trial, or preparation for a joint trial, in which the majority of proof would relate to Counts Two and Three rather than the charge against Glenmark. In preparing for a joint trial, Glenmark would need to review and master millions of documents and underlying facts, even those not related to Count One, because they could be admitted as evidence and factor into the jury's consideration.

Moreover, a joint trial would invite the jury to convict Glenmark based on its alleged association with Teva and the other companies identified in Counts Two and Three. At the very least, the jury would have to assess Glenmark's alleged involvement against the background of broader allegations in Counts Two and Three that implicate numerous other members of the generics industry, rather than deciding the allegations against Glenmark solely on their own merit.

Glenmark recognizes that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005). But this "preference" rests on an assumption not present here: that judicial economy is served because "the same evidence would be presented at separate trials of defendants charged with a single conspiracy." *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991). This case is the reverse. In a trial limited to the sole count against Glenmark, the allegations and evidence on the remaining counts would not be admissible. And, as the Third Circuit has made clear, "no defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial." *United States v. Boscia*, 573 F.2d 827, 833 (3d Cir. 1978).

Glenmark hereby submits this motion for misjoinder and severance and incorporates the memorandum of law in support as set forth below. Glenmark asks the Court to sever it out to face trial alone on Count One, with Teva facing a separate trial on Counts One through Three. This approach is the best way to avoid misjoinder *and* safeguard Glenmark's right to a fair trial, because any joint trial with Teva will present some risk of the government seeking to introduce additional evidence against Teva that would subject Glenmark to unfair prejudice. But regardless of the Court's preferred remedy, it should sever the case so that Glenmark does not face a trial that

features the industry-spanning allegations involving the specified medications in Counts Two and Three, none of which have anything to do with Glenmark or pravastatin.

## I.    FACTUAL AND PROCEDURAL HISTORY

On June 30, 2020, the government filed an Information charging Glenmark alone with one count of conspiracy in violation of 15 U.S.C. § 1.  ECF No. 1.  The Information alleged that Glenmark "and its co-conspirators, including Company A, Apotex, CW-1, CW-2, Individual 1, and Individual 2, knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to increase and maintain prices of pravastatin and other generic drugs sold in the United States." *Id.* ¶ 19.  Glenmark filed a Notice of Objection to Proceeding by Criminal Information, asserting its rights to grand jury presentment under the Fifth Amendment and Federal Rule of Criminal Procedure 7.  ECF No. 8.

Shortly thereafter, the Grand Jury returned a superseding indictment ("First Superseding Indictment" or "FSI") containing a single count that was identical to the Information.  ECF No. 14.  It alleged that Glenmark "entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to increase and maintain prices of pravastatin and other generic drugs sold in the United States." *Id.* ¶ 19.  Glenmark was the sole defendant charged in the FSI.  *Id.*

The government then filed the SSI on August 25, 2020.  ECF No. 28.  Count One of the SSI is identical to the sole count of the Information and the FSI, except it charges both Glenmark and Teva (previously identified as "Company A") as co-defendants.  *Id.* ¶ 20.  Specifically, Count One alleges that Glenmark and Teva, along with other specified co-conspirators "entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to increase and maintain prices of pravastatin and other generic drugs sold in the United States." *Id.*

The SSI also added two new counts—neither of which reference Glenmark or pravastatin.[1] Count Two charges Teva with conspiring with Taro Pharmaceuticals U.S.A., Inc. ("Taro") to "suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States." *Id.* ¶ 36. Compared to Count One, Count Two alleges different means of engaging in an antitrust conspiracy (including by rigging bids and allocating market share), with different alleged co-conspirators (Teva and Taro) and different specified medications (carbamazepine, clotrimazole, etodolac, fluocinonide, and warfarin)—all but one of which Glenmark did not even manufacture or sell during the relevant time period. *Id.* ¶¶ 36, 39.

Count Three charges Teva with participating in another conspiracy to "suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States," again with a different co-conspirator (Sandoz Inc. ("Sandoz")), and again involving different specified medications (etodolac, nadolol, temozolomide, and tobramycin)—none of which were manufactured or sold by Glenmark during the relevant time period. *Id.* ¶¶ 48, 53. As with Count Two—and unlike Count One—Count Three alleges a conspiracy to rig bids and allocate market share. *Id.*

Following the SSI, counsel for Glenmark discussed discovery with the government. During a call on August 28, 2020, in response to an inquiry regarding the size and scope of anticipated discovery, counsel for the government stated their intention to produce to Glenmark just discovery related to Count One, evidencing the government's own understanding that

---

[1] For the Court's reference, a chart comparing the three counts charged in the SSI is attached as **Exhibit A**.

Glenmark has nothing to do with Counts Two and Three.[2]  *See* Declaration of Brian L. Stekloff in Support of Glenmark's Motion for Misjoinder and Severance ("Stekloff Decl.") ¶ 3.  On that call, Glenmark's counsel nonetheless expressed concern that they would not receive or be able to review the government's evidence on the remaining counts.  *Id.*  Such review is necessary in a joint trial to make sure that evidence on the remaining counts does not prejudice Glenmark, and to adequately prepare for cross-examination of witnesses who could testify as to all three counts.  The government subsequently decided to produce discovery on all three counts to Glenmark, and began doing so on October 7, 2020.  *Id.* ¶ 5–6.  Glenmark asked the government to provide an index breaking down the discovery by count, but the government has declined to do so.[3]  *Id.* ¶ 5.

Despite the absence of a count-by-count index, it is clear that the vast majority of discovery pertains to Counts Two and Three, rather than to Count One.  In July 2020—before Counts Two and Three were added to the case—the government told Glenmark's counsel that it planned on producing approximately 3.2 million documents to Glenmark.  *Id.* ¶ 2.  Now that Counts Two and Three have been added, the government has produced over 24 million documents—more than seven times the number it originally forecasted when Glenmark faced indictment alone.  *Id.* ¶ 6. The massive discovery provided to date includes 9,618 Gigabytes ("GB," or *millions* of bytes) of

---

[2] In another call, on September 17, 2020, the government expressed that it was considering providing Glenmark with additional discovery related to Count Three because of "some potential overlap with individuals in Count One."  Stekloff Decl. ¶ 4.  Glenmark believes that the alleged "overlap" is due to the fact that a former Sandoz employee is alleged as a co-conspirator in Count Three.  *See* SSI ¶ 47 (referencing CW-3).  This former Sandoz employee subsequently joined Glenmark, but was *not* affiliated with Glenmark during the any of the alleged conspiracy periods, and Glenmark does *not* face any charges related to his alleged behavior at Sandoz.

[3] On May 21, 2021, the government provided "an initial working list of potentially relevant records" consisting of 2,642 records.  Stekloff Decl. ¶ 10.  The government did not break down these documents by count, and further indicated that this is "a preliminary list that the government intends to supplement during ongoing trial preparation."  *Id.*  Furthermore, this list does not negate the need for Glenmark to review and assess the entirety of the government's document production in preparation for trial.

data from nineteen different generics manufacturers. *Id.* As just one example of the unfair prejudice to Glenmark faces in preparing for a joint trial on all three counts, approximately one-quarter of that data is from Sandoz, which is not implicated in Count One. *Id.* ¶ 7.

Other aspects of the discovery confirm the unfair prejudice to Glenmark in preparing for a joint trial. The government has produced extensive phone records from nearly 100 individuals, almost 150,000 records containing sales and transactional data, and over 200 interview reports with more than 100 witnesses, only five percent of whom were affiliated with Glenmark during the alleged conspiracy period. *Id.* ¶ 6, 8. And even assuming that all Glenmark, Teva, and Apotex documents are related to Count One—which cannot be, since Teva is also charged in Counts Two and Three—documents produced to the government by those three companies make up less than ten percent of the discovery to date. *Id.* ¶ 7.

The government's production is continuing on a rolling basis, increasing the overall amount of discovery that Glenmark needs to review. *Id.* ¶ 9. In recent productions, discovery related primarily to Counts Two and Three continues to predominate. Since the government's initial production on October 7, 2020, Glenmark has received eleven additional productions, amounting to more than three Terabytes ("TB," or *billions* of bytes) of data. *Id.* It appears that a vast majority of the materials in these ongoing productions do not relate to Count One. *Id.*

Glenmark cannot simply ignore this massive discovery when facing a joint trial on all three counts. Instead, it must review it carefully in order to confirm which records relate to Count One and which do not, and to adequately prepare its defense—including preparing objections to any documents that might incorrectly imply Glenmark's involvement in Counts Two or Three, preparing for cross-examination of witnesses who could testify as to all three counts, and preparing any affirmative testimony or documents to be introduced at trial by Glenmark.

## II.    LEGAL STANDARD

### A.  Misjoinder Under Rule 8(b)

Federal Rule of Criminal Procedure 8(b) governs the propriety of joining multiple offenses in a multi-defendant case.[4]  *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003).  Under Rule 8(b), the charged offenses must arise from "the same series of acts or transactions" in which all defendants participated.  Fed. R. Crim. P. 8(b).  Multiple conspiracies may only be joined under Rule 8(b) if "they are related as part of a common scheme," *United States v. Thompson*, 219 F. Supp. 3d 502, 507 (M.D. Pa. 2016), which courts assess by examining "the relatedness of the facts underlying each offense," *United States v. Potashnik*, No. 3:07-CR-289-M, 2008 WL 5272807, at *6 (N.D. Tex. Dec. 17, 2008) (quoting *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985)).  Joinder is only proper "when the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense."  *Id.* (quoting *Harrelson*, 754 F.2d at 1176); *see also United States v. Biaggi*, 705 F. Supp. 852, 863 (S.D.N.Y. 1988) (same).

"It is well settled, however, that two separate transactions do not constitute a 'series' within the meaning of Rule 8(b) 'merely because they are of a similar character or involve one or more common participants.'"  *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y. 1995) (quoting *United States v. Bradford*, 487 F. Supp. 1093, 1095–96 (D. Conn. 1980) (collecting cases)).  "[D]efendants charged with two separate albeit similar conspiracies having one common

---

[4] Rule 8(a) typically governs joinder of offenses.  However, in multiple defendant cases, "the tests for joinder of counts and defendants is merged in Rule 8(b)."  *Irizarry*, 341 F.3d at 287.  "Although the standards of Rule 8(a) and Rule 8(b) are similar, in that they both require a 'transactional nexus' between the offenses or defendants to be joined, Rule 8(a) is more permissive than Rule 8(b) because Rule 8(a) allows joinder on an additional ground, *i.e.*, where the offenses 'are of the same or similar character.'" *Irizarry*, 341 F.3d at 287 n.4; *United States v. Staton*, Nos. 10-800-01, 10-800-02, 2012 WL 2135512, at *2 (E.D. Pa. June 12, 2012) (Surrick, J.), *aff'd*, 605 F. App'x 110 (3d Cir. 2015).

participant are not, without more, properly joined." *United States v. Welch*, 656 F.2d 1039, 1049 (5th Cir. 1981); *see also United States v. Gruttadauria*, 439 F. Supp. 2d 240, 252 (E.D.N.Y. 2006) (mere fact that "ringleader" of two separate conspiracies was charged in both was insufficient for joinder under Rule 8(b)).

To determine whether joinder is proper under Rule 8(b), courts look to the allegations in the indictment and other pre-trial documents. *United States v. Walker*, 657 F.3d 160, 168 (3d Cir. 2011); *see also United States v. Adens*, No. 12-616, 2015 WL 894205, at *1 (E.D. Pa. Feb. 27, 2015) (Stratter, J.) ("To determine whether there is a logical relationship between charges, trial judges may look at pre-trial documents, including but not limited to the indictment.").

"If joinder is improper under Rule 8, the court must order separate trials." *Adens*, 2015 WL 894205, at *2 (citing *Walker*, 657 F.3d at 170). Rule 8 "requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice." *United States v. Lane*, 474 U.S. 438, 449 n.12 (1986); *see also* 1A Charles Alan Wright & Andrew Leipold, Fed. Prac. & Proc. § 146 (5th ed. 2020) ("If there has been misjoinder the court has no discretion to deny the [severance] motion.").

### B. Severance Under Rule 14

In addition to the required severance if joinder is improper under Rule 8, the Court also has discretion to sever defendants or counts pursuant to Federal Rule of Criminal Procedure 14. *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974) ("The disposition of Rule 14 matters is normally within the discretion of the District Court."). "A single trial with more than one defendant creates several risks for the accused." Wright, *supra*, § 224. And where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," a court should grant severance. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

District courts must "vigilantly monitor for developing unfairness and should not hesitate to order severance at any point after indictment if the risk of real prejudice grows too large to justify whatever efficiencies a joint trial does provide." *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir. 1994); *see also United States v. Dileo*, 859 F. Supp. 940, 944 (W.D. Pa. 1994) ("[T]he Federal Rules of Criminal Procedure are to be construed with the paramount concern being the 'just determination of every criminal proceeding,' while 'elimination of unjustifiable expense and delay' are of secondary importance.'").

In order to assess prejudice, the Court should consider "whether the presentation of separate counts with distinct and extensive evidence [would] confuse[] the jury, whether the charging of several crimes [would] ma[ke] the jury hostile, and whether the jury [would be] able to segregate the evidence as to each count." *United States v. Torres*, 251 F. App'x 763, 764 (3d Cir. 2007) (citing *United States v. Weber*, 437 F.2d 327, 332 (3d Cir. 1970)). Where there is a disparity in the evidence between co-defendants, the "primary consideration" under Rule 14 is "whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. De Larosa*, 450 F.2d 1057, 1065 (3d Cir. 1971).

## III.   ARGUMENT

### A.  Count One Was Misjoined with Counts Two and Three in Violation of Rule 8(b)

The SSI presents precisely the situation that triggers a severance under Rule 8(b): three separate conspiracies that do not present "a single series of acts or transactions," charged in the same indictment. *Eufrasio*, 935 F.2d at 567. Pravastatin—one of ten medications mentioned in the SSI—is the only medication specified in Count One and does not appear again in the rest of the indictment. And other than Teva and one former Teva employee, the three counts involve different alleged co-conspirators, different specified medications, different means and methods,

9

and overt acts that allegedly occurred at different times.  *See* Ex. A.  It is likewise apparent, from the discovery produced to date, that evidence concerning Glenmark and pravastatin is only a small fraction of the evidence the government has amassed in this case.

Courts, including in this District, have granted severance motions where separate and distinct offenses or conspiracies were charged in the same indictment.  For example, in *United States v. Grasso*, the court found that joinder was improper because charges against four co-defendants accused of making false statements on loan applications for seven different properties were "at best a series of separate and unconnected offenses."  55 F.R.D. 288, 291 (E.D. Pa. 1972).  The court held that "[m]erely because the defendants all worked out of the same real estate office and that they are charged with the same or similar violations of law is not a basis in and of itself for joint trial."  *Id.*  Rather, "[t]he test of whether the acts of the defendants are part of a series of acts or transactions depends on the existence of a common plan."  *Id.*  The court went on to point out that a "series" requires "something more than mere 'similar' acts."  *Id.*  Likewise, in *United States v. Webb*, the court held that joinder of "two separate and distinct conspiracies" was improper where the "only links" between the two were that both were conspiracies to distribute cocaine and had one co-defendant in common.  827 F. Supp. 840, 841 (D. Mass. 1993).  As the court explained, "mere similarity of acts, without more, cannot justify joinder" and "the presence of one overlapping member does not make two separate conspiracies part of the same series of acts or transactions."  *Id.*  That is precisely the case here.

In defending joinder, the government may emphasize minor commonalities between the three counts, including the alleged involvement of Teva and a single Teva employee in all counts and the fact that all counts charge a violation of section 1 of the Sherman Act.  None of these—either alone or together—are sufficient to sustain joinder under Rule 8(b).

*First*, the alleged involvement of Teva and one of Teva's former employees (identified as CW-1) in all three counts is insufficient to support joinder. "[T]he mere fact that [multiple] conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one conspiracy, one common plan or scheme." *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985); *see also Welch*, 656 F.2d at 1049 ("It is clear that defendants charged with two separate albeit similar conspiracies having one common participant are not, without more, properly joined."). Joinder of separate conspiracies in one indictment is appropriate only if "the separate conspiracies it charges arise from a common plan or scheme and so could alternatively have been charged as a single conspiracy." *Velasquez*, 772 F.2d at 1353; *see also United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) ("To prove a conspiracy, the government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal."). Here, the government did not allege that the conspiracies arose from a common plan. Nor could it have done so, as evidenced by the fact that Glenmark did not manufacture or sell all but one of the other medications identified in Counts Two and Three and the government's own admission in their initial, post-indictment statements to Glenmark regarding the scope of discovery. *See supra* pp. 4–5.

Indeed, where, as here, the only apparent link between the alleged schemes is a common defendant, charging a single, overarching conspiracy would have violated *Kotteakos v. United States*, 328 U.S. 750 (1946), and its progeny. In *Kotteakos*, the Supreme Court reversed several defendants' convictions under an overarching conspiracy charge because the evidence established that each defendant had conspired separately with the same individual without establishing any common scheme or plan linking those separate conspiracies. *Id.* at 773–74. The Supreme Court

based its decision on defendants' "right not to be tried en masse for the conglomeration of distinct and separate offenses." *Id.* at 775. This same right argues in favor of finding misjoinder here, so that the government is not permitted to "string together, for common trial, . . . separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lie[s] in the fact that one man participated in all." *Id.* at 773.

Courts have rejected joinder of separate and distinct counts even when the same defendants are charged in every count. For example, in *United States v. Homick-Van Berry*, the court severed an indictment charging a husband and wife with two separate conspiracies: one to obstruct commerce through robbery and the other to commit bribery concerning a federally funded program. No. 04-269 (JBS), 2005 WL 1168398, at *3 (D.N.J. May 18, 2005). Noting that "the [g]overnment ha[d] not charged an overarching conspiracy" and instead charged both defendants "in two distinct conspiracies," the court held that joinder was improper "[b]ecause '[s]eparate and distinct conspiracies cannot be joined together and prosecuted as a single conspiracy' under Rule 8(b)." *Id.* (quoting Wright, *supra*, § 145). "That the same participants were involved in crimes of a separate nature," the court held, "is not sufficient to connect otherwise distinct crimes. For if it were, seldom would joinder of distinct offenses in multi-defendant prosecutions be improper under Rule 8(b)." *Id.* at *5. The misjoinder here is far clearer, and more extreme, than in *Homick-Van Berry*, because not only are the three conspiracies separate and distinct, but Glenmark is *not* charged in two of them.

*Second*, the fact that all three charged conspiracies allege price fixing of pharmaceutical products in violation of Section 1 of the Sherman Act does not justify joinder. *See, e.g.*, *Potashnik*, 2008 WL 5272807, at *14 (simply alleging the same offense is insufficient for joinder). Rather than looking simply to the offense charged, the Court must look to "the *facts underlying the*

*Counts*." *Id.* (emphasis in original). Severance is warranted where the alleged facts of one count are "sufficiently dissimilar" from the facts of the others. *Id.*

*United States v. Marionneaux* is directly on point. 514 F.2d 1244 (5th Cir. 1975).[5] There, the indictment charged "two separate conspiracies to obstruct justice." *Id.* at 1248. The court identified "only three links" between the conspiracies: (1) the presence of one common co-defendant; (2) the allegation that a defendant in count one also participated in one overt act relevant to count two; and (3) the fact that both conspiracies were, in part, schemes to prevent witnesses from testifying against a particular person. *Id.* The court held that joinder "was impermissible under Rule 8(b)" because there was "no substantial identity of facts or participants between the two offenses." *Id.* at 1249; *see also United States v. Morris*, 176 F. Supp. 2d 668, 670–71 (N.D. Tex. 2001) (granting motion to sever and finding that there was "no 'overreaching conspiracy' nor [was] there a 'substantial identity of facts or participants'" in a case where "separate and distinct conspiracies" were charged). The same result should obtain here.

In sum, the different factual underpinnings for the three conspiracies alleged here would "require [the jury] to distinguish separate conspiracies and conspirators." *United States v. Gatto*, 746 F.Supp. 432, 449 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir. 1991). That is a result that Rule 8(b) prohibits. Severance is thus required.[6]

---

[5] The Eleventh Circuit, in *United States v. Watson*, cited a long list of cases, including *Marrionneaux*, which it deemed to be overruled by implication "to the extent that they hold or imply that misjoinder under either Rule 8(a) or 8(b) is inherently prejudicial." 866 F.2d 381, 385 n.3 (11th Cir. 1989). This, however, concerns only *Marrioneaux*'s discussion of the standard of review on appeal. *Marrionneaux*'s analysis as to the *existence* of misjoinder remains undisturbed.

[6] The fact that Glenmark is charged with a conspiracy that is separate and distinct from those alleged in Counts Two and Three sets this case apart from previous cases in which this Court has declined to order severance. *See, e.g., United States v. Savage*, Nos. 07-550-03, 07-550-04, 07-550-05, 07-550-06, 2012 WL 6609425, at *21 (E.D. Pa. Dec. 19, 2012) (Surrick, J.) (denying severance where defendant participated in a "common illicit enterprise" and the government "offer[ed] common evidence to prove each of these counts"); *Staton*, 2012 WL 2135512, at *4

## B. Glenmark Is Entitled to Severance Under Rule 14

Even if joinder were proper under Rule 8(b)—and it is not—Glenmark would still be entitled to severance under Rule 14 to prevent unfair prejudice from a joint trial. If not for Teva being charged in all three counts, Count One would never have been included in the same indictment as Counts Two and Three. This is clear from the fact that the FSI—where Glenmark was the sole defendant—only included Count One. Without severance, a substantial amount of evidence will be presented at a joint trial that would not be admissible in a trial limited to Count One. This additional evidence would inevitably, and inappropriately, affect the jury's consideration of Glenmark.

This case presents similar facts to *United States v. Islam*, where Judge McHugh ordered severance. *See* No. 20-cr-00045, 2021 WL 308272 (E.D. Pa. Jan. 29, 2021). In *Islam*, the defendants seeking severance were only charged in two counts of a twenty-two count indictment. *Id.* at *1. Judge McHugh held that severance was appropriate because the defendants were not charged in all counts of the indictment, "highly prejudicial evidence would likely not be admissible against them in a severed trial," and "a jury in a joint trial would be unable to compartmentalize the evidence" against the defendants seeking severance from the other evidence likely to be introduced at trial. *Id.* at *3. The same is true here.

Even though the three counts in the SSI are separate and distinct, they each involve allegations of price fixing by manufacturers of generic drugs. This creates a substantial risk that the jury could find Glenmark guilty by association. Put another way, there is a great risk of unfair prejudice because "evidence that the jury should not consider against [Glenmark] and that would

---

(denying severance where defendants "used the same fraudulent businesses as vehicles through which [they] committed the offenses" and the government planned to put on common evidence for the ten counts).

not be admissible if [Glenmark] were tried alone" will undoubtedly be admitted as to Teva on Counts Two and Three. *Zafiro*, 506 U.S. at 539. The government will argue, based on that evidence, that multiple generic manufacturers conspired to fix the prices of multiple drugs. A jury exposed to that evidence and argument will surely think it more likely that Glenmark did the same with respect to pravastatin. This creates "a 'serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Bryant*, 556 F. Supp. 2d 378, 465 (D.N.J. 2008). Here, as in *Islam*, this risk is further compounded by the likely testimony of a former Teva employee (CW-1) who is implicated in all three counts, and whose testimony as to Counts Two and Three "would not be admissible in a severed trial of only Count[] [One]." *Islam*, 2021 WL 208272, at *4. "In a joint trial, although a jury could be instructed to ignore [the former Teva employee's] testimony as it relates to Count[] [One], the prejudice is so high that [Glenmark] would likely be deprived of a fair trial." *Id.*; *see also United States v. Harrison*, No. 3:20-CR-105, 2021 WL 1816895, at *2 (S.D. Ohio May 6, 2021) (granting motion to sever because "[e]ven with limiting instructions, there would be an impermissible danger of the jury convicting [the defendant] on a theory of 'guilt by association' once it hears substantial evidence about his co-defendant").

Unfair prejudice is even more likely because of the vast amount of discovery in the case, which forecasts a lengthy trial if all three counts are tried together. "A lengthy trial may prejudice those defendants against whom much of the evidence is not relevant simply by the slow but inexorable accumulation of evidence against the major players." *Gatto*, 746 F. Supp. at 450 (internal quotation marks and citation omitted). Given the size of the discovery as to Counts Two and Three, the "gross disparity in the evidence" presents a danger that Glenmark "will suffer 'spillover prejudice' due to the accumulation of evidence against" other generic manufacturers.

*United States v. Stoecker*, 920 F. Supp. 876, 886 (N.D. Ill. 1996).  Where, as here, there is an "unquestionable" disparity in the font of evidence against Glenmark (which is charged in one count as to one specified medication) and Teva (which is charged in all three counts as to ten specified medications), the Court must "not presume that jury instructions will adequately cure potential prejudice," and should instead sever the case. *Id.*  Otherwise, "[a] jury would be required to ignore vast amounts of evidence and potentially weeks' worth of testimony in narrowing its focus to a separate consideration of Count[] [One]," which "is untenable." *Islam*, 2021 WL 208272, at *4; *see also United States v. Dougherty*, No. CR 19-64, 2020 WL 6395464, at *3 (E.D. Pa. Nov. 2, 2020) (Schmehl, J.) (holding that a reasonable jury could not, even with jury instructions, "ignore weeks' worth of evidence against some defendants while simultaneously using that evidence against other defendants in coming to multiple verdicts").

The risk of unfair prejudice is also exacerbated because this is a complex case involving antitrust issues that will likely be unfamiliar to the jury, making it harder to compartmentalize the evidence. *Savage*, 2012 WL 6609425, at *3 (Surrick, J.) ("When many defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice is heightened.") (quoting *Zafiro*, 506 U.S. at 539).  And the fact that all three counts allege price-fixing conspiracies in the generics industry would only make it harder for the jury to "compartmentalize" the evidence on Count One. *Cf. United States v. Avila*, 610 F. Supp. 2d 391, 398 (M.D. Pa. 2009) (denying motion to sever because the counts were so different, charging crimes of a different nature over different periods of time, which would allow the jury to "readily separate" facts pertaining to each).

Further, antitrust claims focus on markets, not industries.  "[I]n the pharmaceutical context courts have limited the market to similar classes of drugs." *United Food & Com. Workers Loc.*

*1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F.Supp.3d 1142, 1171 (N.D. Cal. 2017) (citing *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1064 (3d Cir. 1978)).  The ten medications specified in the SSI make up distinct markets—each with different sets of competitors, customers, and pricing models—and the government must prove a price fixing conspiracy in each of the alleged markets.  Glenmark should not be required to face a joint trial where much of the evidence will focus on markets in which it did not even participate.

Finally, as explained in Section I, *see supra* pp. 5–6, a joint trial on all counts would prejudice Glenmark *in preparation* for trial.  A trial on Count One would result in Glenmark having to review a vastly smaller and thus—appropriately—more manageable amount of discovery and prepare for more focused and curtailed examinations of fewer witnesses.  Furthermore, Glenmark's burden goes beyond reviewing the evidence and determining what parts of it are relevant to Count One.  It also needs to assess how the discovery on the remaining counts could implicate its defense.  For instance, Glenmark may object to certain evidence that is offered on Counts Two or Three but could mislead or confuse the jury as to Count One.  And, like any defendant, Glenmark must assess the full evidence that could be admitted by the government in informing any affirmative evidence that Glenmark would present.  Thus, without severance, counsel for Glenmark needs to review and master large amounts of data concerning witnesses, companies, and medications not at issue in Count One.  Finally, for a joint trial on all three counts, Glenmark must prepare to cross-examine multiple witnesses, including current or former Teva employees, who will likely be asked about Teva's conduct in all three counts.  Such preparation necessarily involves understanding everything those witnesses may say on direct examination.

In exercising its discretion under Rule 14, the Court must "balance[] the potential prejudice to the defendant against the advantages of joinder in terms of judicial economy." *United States v.*

*Sandini*, 888 F.2d 300, 305 (3d Cir. 1989). In this case, joinder does not materially advance the interest of judicial economy. Because there is a lack of factual overlap between the three counts, judicial resources will not be substantially conserved by trying these unrelated conspiracies in one trial. And, given ongoing concerns and delay caused by the COVID-19 "pandemic, it is not clear that judicial economy is invariably served by holding one combined longer trial as compared to two shorter ones." *Islam*, 2021 WL 208272, at *5. And even where joinder promotes "economy and efficiency and . . . avoid[s] a multiplicity of trials," *Zafiro*, 506 U.S. at 540, courts may not "secure greater speed, economy and convenience . . . at the price of fundamental principles of constitutional liberty," *Bruton v. United States*, 391 U.S. 123, 134–35 (1968). "[N]o defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial." *Boscia*, 573 F.2d at 833. "The goal of the judicial process is not to decide cases as quickly and as inexpensively as possible." *Id.* Accordingly, Glenmark is entitled to severance under Rule 14.[7]

### C. The Court Should Exercise Its Discretion to Sever Glenmark to Be Tried Alone on Count One

For all the above reasons, the Court should sever the case so that Glenmark does not face trial, or preparation for trial, as to Counts Two and Three. The best way to do so would be to sever out Glenmark to face trial alone on Count One, with Teva facing a separate trial on all three counts. This is the best remedy because any joint trial with Teva, even just as to Count One, will present some risk of the government seeking to introduce additional evidence against Teva—including

---

[7] A district court also may rely on its "separate case management authority," in addition to Rule 14, to order separate trials. *United States v. Leichter*, 160 F.3d 33, 35–36 (1st Cir. 1998). "The power to order separate trials 'rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar.'" *Id.* at 35 (quoting *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978)).

under Federal Rule of Evidence 404(b)—that could subject Glenmark to unfair prejudice. Moreover, while severance of Glenmark from Teva "may require some duplicity," so would the other severance remedy available to the Court, which is to sever Count One and have Glenmark and Teva stand trial on it together, while Teva faces a separate trial on Counts Two and Three. *Gatto*, 746 F. Supp. at 451.  Glenmark respectfully submits that, of the available options, severing Glenmark out from Teva best "serve[s] judicial economy and improve[s] the likelihood that the jury will return a fair verdict."  *Id.*

## CONCLUSION

For the foregoing reasons, Glenmark respectfully requests that this Court sever the case and relieve Glenmark from the misjoinder and unfair prejudice of preparing for and facing a joint trial on all three counts in the SSI.

Dated: July 1, 2021

Respectfully submitted,

/s/ *Beth A. Wilkinson*
_____

Ann C. Flannery (PA 52553)

LAW OFFICES OF ANN C. FLANNERY, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone: (215) 636-9002
Fax: (215) 636-9899
acf@annflannerylaw.com

Beth A. Wilkinson (*pro hac vice*)
Brian L. Stekloff (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@ wilkinsonstekloff.com
kstojilkovic@ wilkinsonstekloff.com

*Attorneys for Defendant Glenmark Pharmaceuticals Inc., USA*

## CERTIFICATE OF SERVICE

I, Beth A. Wilkinson, do hereby certify that I have served a true and correct copy of the foregoing document upon all counsel/parties by electronic filing on July 1, 2021. This document has been filed electronically and is available for viewing and downloading from the ECF system.

*/s/ Beth A. Wilkinson*
Beth A. Wilkinson

# EXHIBIT A

## COMPARISON OF COUNTS IN THE SECOND SUPERSEDING INDICTMENT

|  | Defendant(s) | Medications Implicated | Alleged Co-Conspirators | Allegations |
|---|---|---|---|---|
| **Count One** | Teva; Glenmark | • pravastatin (SSI ¶ 20.) | • Apotex Corp.<br>• CW-1 (Teva employee)<br>• CW-2 (Glenmark employee)<br>• Individual 1 (Teva employee)<br>• Individual 2 (Apotex employee)<br>(SSI ¶¶ 12–17, 20.) | "knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to **increase and maintain prices** of pravastatin and other generic drugs sold in the United States." (SSI ¶ 20 (emphasis added).) |
| **Count Two** | Teva | • carbamazepine<br>• clotrimazole topical solution 1%<br>• etodolac immediate and extended release<br>• fluocinonide cream, emollient, gel, and ointment<br>• warfarin<br>(SSI ¶ 39.) | • Taro Pharmaceuticals U.S.A., Inc.<br>• CW-1 (Teva employee)<br>• Ara Aprahamian (Taro employee)<br>(SSI ¶¶ 33–34, 36.) | "knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to **allocate customers and rig bids for, and stabilize, maintain, and fix prices** of, generic drugs sold in the United States." (SSI ¶ 36 (emphasis added).) |
| **Count Three** | Teva | • etodolac immediate release<br>• nadolol<br>• temozolomide<br>• tobramycin<br>(SSI ¶ 53.) | • Sandoz, Inc.<br>• CW-1 (Teva employee)<br>• CW-3 (Sandoz employee)<br>(SSI ¶¶ 45–47, 36.) | "knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to **allocate customers and rig bids for, and stabilize, maintain, and fix prices** of, generic drugs sold in the United States." (SSI ¶ 48 (emphasis added).) |