IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 20-200 |
| : | |
| TEVA PHARMACEUTICALS USA, INC. : | |
| and GLENMARK PHARMACEUTICALS., : | |
| USA : | |

# O R D E R

**AND NOW**, this 12th day of January 2022, upon consideration of Defendant Glenmark Pharmaceuticals, USA's Emergency Motion for Relief from Compulsory Interviews and Related Misconduct by the Antitrust Division (ECF No. 117), Teva Pharmaceuticals USA, Inc.'s Response in Support (ECF No. 126), and the Government's Response in Opposition (ECF No. 133), and all documents submitted in support thereof and in opposition thereto, it is **ORDERED** that the Motion is **DENIED without prejudice**.[1]

IT IS SO ORDERED.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[1] This matter stems from an alleged conspiracy to fix prices of generic drugs in the United States between five companies, including Teva and Glenmark. The United States has investigated this conspiracy for several years and has sought related evidence abroad. In doing so, the United States submitted requests to India and Israel in 2018 and 2019 under the Mutual Legal Assistance Treaties (MLATs) for interviews of potential witnesses, including executives of non-party Glenmark India, which is Defendant Glenmark's parent company. A voluntary interview of a former Teva CEO was conducted pursuant to these requests in Israel in 2019.

Teva and Glenmark were indicted in this matter in a Second Superseding Indictment in August of 2020. Thereafter, in July of 2021, Indian authorities contacted Glenmark India to schedule interviews of Glenmark India executives, pursuant to the October 2019 MLAT request. Following this contact, Glenmark USA's counsel informed the United States that they also represented Glenmark India and that the interviews should only proceed if the executives were accompanied by counsel. The United States responded that the Glenmark India executives whose interviews were sought might have sufficiently divergent interests from Glenmark USA such that separate counsel was needed. Glenmark USA then filed the instant Motion for Emergency Relief from Compulsory Interviews and Related Misconduct by the Antitrust Division. Teva joined the motion, requesting their own relief. Glenmark and Teva's requests will be addressed separately.

Glenmark brings this motion asking the court to order the Antitrust Division to (1) halt all non-attorney contacts with represented parties pursuant to Pennsylvania Rule of Professional Conduct 4.2 and (2) cease and desist from causing compulsory interviews of senior Glenmark India executives. We address each of these in turn.

First, Glenmark argues that the Antitrust Division has violated Pennsylvania Rule of Professional Conduct 4.2 by causing Glenmark India to be contacted directly by the Indian authorities to schedule the interviews while they are represented by counsel. Rule 4.2 states:

> [I]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa. R. Prof'l Conduct 4.2. Rule 4.2 requires that the contacting lawyer have "actual knowledge" that the individual or company is in fact represented in the matter to be discussed. Pa. R. Prof'l Conduct 4.2, cmt. 8. "Actual knowledge" may be inferred by the circumstances. *Id*. Glenmark asserts that the United States should have inferred that Glenmark India was represented by counsel from the Stipulated Protective Order (ECF No. 47) because it allowed the free sharing of information and discovery between both Glenmark entities "as if [Glenmark India] was a party/Defendant." (Stipulated Protective Order, ¶ 3.)

We do not agree that the Stipulation alone prompted an "infer[ence] from the circumstances" that Glenmark India was also represented by counsel. The United States did not have actual knowledge of Glenmark India's representation, and it was not "closing its eyes to the obvious." Pa. R. Prof'l Conduct, 4.2 cmt. 8. This is further evidenced by the fact that the United States, after being informed that Glenmark India was represented the day after it was contacted to set up the interviews, agreed only to contact Glenmark India through counsel going forward. Therefore, there is no threat of future violations of Rule 4.2 and no further relief is necessary.

Second, Glenmark argues that we should prohibit the United States from conducting compulsory interviews of Glenmark India executives in India pursuant to the MLAT requests. However, the Government has represented that the interviews requested by Indian officials are

2

voluntary.  As such, this part of the motion is now moot.  However, if Indian officials later indicate that the interviews are compulsory, Defendant Glenmark USA may refile this motion.

       Teva, in its Response in Support of Glenmark's Motion, joins Glenmark in asking the Court to bar any attempt by the Antitrust Division to use MLAT requests to contact or compel testimony from foreign witnesses or corporate entities affiliated with Teva.  However, as discussed above, a voluntary interview of a former Teva CEO was already conducted in Israel in 2019, before Teva was indicted, and there are no pending MLAT requests for interviews of Teva Israel or Teva USA individuals.  Therefore, Teva has no basis upon which to seek relief from this court and we decline to give prospective relief.