IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 20-200 |
| | : | |
| TEVA PHARMACEUTICALS USA, INC. | : | |
| and GLENMARK PHARMACEUTICALS., | : | |
| USA | : | |

## MEMORANDUM

**SURRICK, J.**                                                          **JANUARY 14, 2022**

This matter arises out of an alleged conspiracy between pharmaceutical companies to fix the price of generic drugs in the United States.  Defendants Glenmark Pharmaceuticals, USA and Teva Pharmaceuticals USA, Inc. are charged in a three-count indictment with violations of 15 U.S.C. § 1 (Conspiracy to Restrain Trade) for allegedly conspiring together, and with other non-party pharmaceutical companies, to fix prices, rig bids, and allocate markets for generic drugs. While Teva is charged in all counts of the indictment, Glenmark is only charged in Count I. Glenmark now brings this Motion for Misjoinder and Severance, arguing that joinder of the two defendants in the indictment was improper or, in the alternative, that a joint trial would unfairly prejudice it so the case should be severed.  We are satisfied that Glenmark and Teva have been properly joined in the indictment because there is a sufficient "transactional nexus" between the conspiracies alleged.  We also find that severance is not appropriate because a joint trial would not unfairly prejudice Glenmark.  Accordingly, this motion will be denied, and a joint trial will proceed.

## I.   BACKGROUND

Defendants Glenmark and Teva, along with non-parties Apotex, Taro, and Sandoz, are alleged to have participated in a conspiracy to fix the price of multiple generic drugs in the United States.  The alleged conspiracy generally unfolded as follows: Glenmark and Teva conspired and agreed to increase and maintain the price of drugs that they both sold, namely pravastatin, adapalenem, and nabumetone.  The Teva representative then reached out to representatives at Taro and Sandoz and conspired with them to follow Glenmark's price increase of adapalenem and nabumetone, respectively.  Teva, Taro, and Sandoz also agreed to stop soliciting and submitting bids to each other's customers.  Ultimately, when Glenmark first increased its prices for the aforementioned drugs, it was closely followed by a similar price increase by Taro, Sandoz, and Teva.  All three counts unfolded in a similar manner, with a similar objective to fix the prices of generic drugs in the United States.  On August 25, 2020, a grand jury issued a three-count second superseding indictment against Defendants Glenmark and Teva.  (Second Superseding Indictment ¶ ¶ 21-57, ECF No. 28.)

Count I charges Glenmark and Teva with 15 U.S.C. § 1 (Conspiracy to Restrain Trade).  (*Id*. at 21.)  Count I alleges that Glenmark, Teva, and non-party Apotex "entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to increase and maintain prices of pravastatin and other generic drugs sold in the United States."  (*Id*.)  Specifically, the indictment states that a representative of Teva and a representative of Glenmark agreed that Teva would follow Glenmark's price increase on several generic drugs that both companies sold, including pravastatin.  The indictment further states that both companies did in fact increase the prices of these drugs pursuant to their agreement.  (*Id*. at 22.)

2

Count II charges Teva with violating 15 U.S.C. § 1 (Conspiracy to Restrain Trade).  (*Id*. at 32.)  Count II alleges that Teva and non-party Taro U.S.A. "suppress[ed] and eliminate[d] competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States."  (*Id*. at 33.)  Specifically, the indictment states that the Teva representative and Ara Aprahamian, the Vice President of Rx Marketing at Taro, discussed potential price increases of multiple generic drugs, including carbamazepine, clotrimazole, etodolac, fluocinonide, and warfarin.  They agreed that if one company led a price increase, it would provide the other company with its new non-public prices.  This agreement and information sharing allegedly ensured that the new, higher prices were implemented and maintained at the agreed-upon level, and disallowed Teva or Taro's customers to switch suppliers.  (*Id*.)

Count III charges Teva with violating 15 U.S.C. § 1 (Conspiracy to Restrain Trade).  (*Id*. at 44.)  Count III alleges that Teva conspired with non-party Sandoz to "suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States."  (*Id*. at 45.)  The drugs include etodolac, nadolol, temozolomide, and tobramycin.  (*Id*. at 53.)  Specifically, the indictment alleges that when Teva or Sandoz prepared to launch a generic drug sold by both companies, a representative of Teva and a representative of Sandoz agreed which customers the company launching the drug would solicit and which customers the other company would relinquish.  (*Id*. at 49-54.)  The purpose of this agreement was to allow the launching company to obtain customers quickly at the highest price possible and minimize the price decline for drugs being launched.  (*Id*.)

In addition, the Government indicates that they intend to proffer the following evidence at trial which shows additional overlap and connections between the counts against Glenmark and Teva, and involving Taro and Sandoz:

When Glenmark anticipated a price increase on certain generic drugs that both it and Teva sold, a Glenmark representative and Teva representative discussed the anticipated price increase and Teva agreed that it would follow Glenmark's price increase on pravastatin, adapalene (also sold by Taro) and nabumetone (also sold by Sandoz). The Teva representative then discussed those increases with Taro and Sandoz and obtained their support for the anticipated price increases for adapalene and nabumetone as well. The Teva representative and Sandoz representative further agreed that Teva and Sandoz would not take each other's customers when one increased the price of nabumetone (a drug they both sold), and confirmed that this plan would work because other competitors (i.e., Glenmark) had also agreed to increase the price of that drug.

After these conversations between executives at Teva, Glenmark, Sandoz, and Taro, Teva put pravastatin, adapalene, and nabumetone, among other drugs, on a list of high priority products for price increases, with the understanding that the other companies would similarly raise their prices. Thereafter, Glenmark increased its price for drugs including pravastatin, adapalene, and nabumetone on May 16, 2013. Taro followed Glenmark's price increase on adapalene in late May 2013. Sandoz followed Glenmark's price increase on nabumetone in July 2013. Teva followed the price increase on adapalene and nabumetone in July 2013 and on pravastatin in August 2013. Immediately after these price increases, Glenmark, Teva, Taro, and Sandoz began declining to submit bids to each other's customers.

The Government asserts that by not giving customers viable options other than to remain with their original suppliers, the conspirators forced a market-wide price increase on numerous drugs, including pravastatin, adapalene, and nabumetone.  The indictment alleges that the conspirators gained significantly from these schemes and caused a loss to the victims in the following amounts: Count I alleges a gain/loss of at least $200 million, and Count II and III both allege a gain/loss of at least $75 million.

The parties have produced significant discovery, and discovery is continuing on a rolling basis.  The Government has provided both Teva and Glenmark with discovery as to all counts, although Glenmark is only a defendant to Count I.  The vast majority of the discovery produced is only relevant to Counts II and III.  The Government has also provided both defendants with a list of additional drugs not specifically named in the indictment related to Count I that they intend to present evidence about at trial.

Glenmark now brings this Motion for Misjoinder and Severance, asking the Court to sever the case and relieve Glenmark from the alleged misjoinder and/or the unfair prejudice of preparing for and facing a joint trial on all three counts in the indictment.

## II.    LEGAL STANDARDS

Glenmark moves for misjoinder and severance in this matter under Federal Rule of Criminal Procedure 8(b).  In the alternative, it moves for severance under Rule 14(a) for unfair prejudice.

### A.    Federal Rule of Criminal Procedure 8(b): Misjoinder

Federal Rule of Criminal Procedure 8(b) governs the joinder of defendants in a common indictment.  Rule 8(b) states:

(b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or

5

in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rule 8(b) is "less permissive" than Rule 8(a), which governs the joinder of offenses against a single defendant. *United States v. Eufrasio*, 935 F.2d 552, 570 (3d Cir. 1991); *see also United States v. Jimenez*, 513 F.3d 62, 82 (3d Cir. 2008) (noting that "joinder of defendants under Rule 8(b) is a stricter standard than joinder of counts against a single defendant under Rule 8(a)").

In general, when considering a motion for misjoinder under Rule 8(b), the "fundamental principle [is] that the federal system prefers 'joint trials of defendants who are indicted together' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (alteration in original)). This is particularly true in cases where defendants have been charged with engaging in a conspiracy. *See Eufrasio*, 935 F.2d at 567. Rule 8(b) requires that defendants have participated in the "same act or transaction, or in the same series of acts or transactions" in order to be properly joined. Fed. R. Crim. P. 8(b). However, "[i]t is not enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus . . . before joinder of defendants in a multiple-defendant trial is proper." *United States v. Jimenez*, 513 F.3d 62, 82-83 (3d Cir. 2008) (citing *United States v. Irizarry*, 341 F.3d 273, 287 n.4 (3d Cir. 2003)). For the charges to be considered part of the same "transactional nexus," all that is required is a "logical relationship" between them. *United States v. Adens*, No. 12-616, 2015 U.S. Dist. LEXIS 25037, at *6 (E.D. Pa. Feb. 27, 2015); *United States v. Kemp*, No. 04-370, 2004 U.S. Dist. LEXIS 24189, at *8 (E.D. Pa. Dec. 2, 2004).

The Third Circuit has also noted that Rule 8(b) permits joinder of defendants charged with participating in the same conspiracy—even when different defendants are charged with different acts—so long as the indictment indicates that all the acts charged against each joined defendant are acts undertaken in furtherance of, or in association with, a commonly charged conspiracy. *Eufrasio*, 935 F.2d 553 at 567; *United States v. Savage*, No. 07-550, 2012 U.S. Dist. LEXIS 179203, at *8 (E.D. Pa. Dec. 18, 2012). Joinder of counts arising out of a conspiracy is permitted "*since the claim of conspiracy provides a common link*, and demonstrates the existence of a common scheme or plan." *Id.* (quoting *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974)).

Finally, when determining "whether there is a logical relationship [or transactional nexus] between charges, trial judges may look at pre-trial documents, including but not limited to the indictment." *Adens*, 2015 U.S. Dist. LEXIS 25037 at *6 (citing *United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992)). Where pretrial documents "other than the indictment clarify factual connections between the counts," the court may use those documents in deciding motions to sever. *McGill*, 964 F.2d at 242. The court may also consider contentions by the Government on what evidence they intend to proffer at trial. *Id.*

## B.    Federal Rule of Criminal Procedure 14: Severance

Even if joinder is proper under Rule 8(b), a district court may order Rule 14 severance if the potential prejudice outweighs the expense and time of separate trials that essentially retry the same issue. *See Zafiro*, 506 U.S. at 537. *See also United States v. Joshua*, 976 F.2d 844, 847 (3d Cir. 1992) ("Severance decisions under Rule 14 require the district court to weigh the potential for prejudice to the defendant from joinder against the conservation of judicial

resources that joinder will occasion.").  Federal Rule of Criminal Procedure 14 states, in relevant part:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials or because the evidence is different as to each defendant.  "Severance should only be granted 'if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"  *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (quoting *United States v. Urban*, 404 F.3d 754, 775).  To prevail on a Rule 14 motion, a defendant has a "heavy burden," *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994), and must "'pinpoint clear and substantial prejudice resulting in an unfair trial.'" *Riley*, 621 F.3d at 335.  "Even if a defendant does establish prejudice by the joinder, severance is not necessarily required if the trial court, in its discretion, can cure the prejudice through a limiting instruction."  *Zafiro*, 506 U.S. at 539.

## III.    DISCUSSION

Glenmark argues primarily that this case should be severed for misjoinder under Rule 8(b) because the indictment does not charge an overarching conspiracy.  Alternatively, it argues that severance should nevertheless be granted under Rule 14 because unfair prejudice would result if the trial were to proceed jointly.  For the following reasons, we deny the motion as to both Rule 8(b) and Rule 14.  The trial will proceed jointly.

### A.     Misjoinder

Generally, it is preferred that defendants who are indicted together are tried together. *Urban*, 404 F.3d at 775.  However, Rule 8(b) requires that there be a "transactional nexus" or "logical relationship" between the acts or transactions of the defendants and the charges in the indictment for the defendants to have been properly joined.  *Jimenez*, 513 F.3d at 82-83; *Adens*, 2015 U.S. Dist. LEXIS 25037, at *6.  Glenmark argues that it was misjoined with Teva in violation of Rule 8(b) because there is no "transactional nexus" between the conspiracy alleged in Count I (involving Glenmark and Teva) and the conspiracies in Counts II and III (involving Teva and the non-party companies).  We disagree.

In reviewing the indictment, along with relevant pretrial documents and evidence that the Government intends to proffer at trial[1], there is clearly a transactional nexus and a "logical

---

[1] When deciding a motion for misjoinder, courts may consider pretrial documents, including but not limited to the indictment, as well as contentions by the government on what evidence they intend to proffer at trial.  *McGill*, 964 F.2d at 242.  Glenmark seems to suggest in its motion and subsequent responses that the Government has erred by including additional facts and information which they intend to proffer at trial in their opposition, and that the court should not consider this information.  This is clearly not the law.  The Third Circuit has held that a trial court may consider evidence that the government intends to proffer at trial when determining whether there is a sufficient factual nexus between the acts of the defendants.  *Id*.

Glenmark and Teva also make a constructive amendment argument, asserting that the additional information given by the Government in their opposition goes beyond what is in the indictment and, therefore, that they are constructively amending it.  This argument is incorrect.  Constructive amendment only occurs when "the evidence and jury instructions *at trial* modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged."  *United States v. Daraio*, 445 F.3d 253, 259-60 (3d Cir. 2006) (citing *United States v. Miller*, 471 U.S. 130, 140 (1985)) (emphasis added).  Clearly, we are not at the trial stage of this litigation.  Therefore, it is not possible to have a constructive amendment of the indictment at this juncture.

Further, even if this was a proper time to raise a constructive amendment argument, the allegations of constructive amendment here would still fail.  The indictment charges Glenmark with price fixing of "pravastatin and *other generic drugs*."  (SSI ¶ 20.) (emphasis added).  Therefore, the fact that the Government now intends to bring evidence of other generic drugs involved in Glenmark's portion of the conspiracy is in line with the indictment; the Government

relationship" between the acts of defendants in this matter.  In Count I, the government alleges

that Glenmark and Teva agreed to increase and maintain the price of drugs that they both sold—

pravastatin, adapalenem, and nabumetone—and charged them both with conspiracy to fix prices

of generic drugs.  Counts II and III allege that Teva conspired with non-parties Taro and Sandoz

to follow Glenmark's price increase of adapalenem and nabumetone, respectively.  Counts II and

III also allege that Teva, Taro, and Sandoz agreed to cease submitting bids to each other's

customers and agreed not to solicit each other's customers.  Ultimately, the Government alleges

that these conspiracies came to fruition when Glenmark first increased its prices for the

aforementioned drugs, closely followed by Taro, Sandoz, and Teva.

The case of *United States v. Patel*—cited by Glenmark in support of its motion—

provides guidance and support for denying this motion because joinder is proper here.  In *Patel*,

the three defendants participated in a drug conspiracy where Patel, a licensed pharmacist,

ordered large quantities of Oxycodone and supplied it to two redistributors.  *United States v.*

*Patel*, No. 15-157, 2017 WL 11368297, at *1 (E.D. Pa. Nov. 9, 2017).  The defendant distributor

and his associate worked together to illegally sell the Oxycodone pills.  *Id*.  However, when they

discovered that Patel was favoring the other distributor in supplying the Oxycodone, they

recruited a hit man to kill him.  *Id*.  Patel, the defendant distributor, and his associate were all

charged with participating in the drug conspiracy.  *Id*.  However, the defendant distributor and

his associate were also charged, in the same indictment, with murder committed in relation to a

---

specifically stated that Glenmark's conspiracy involved "other generic drugs."  In addition,
regardless of the additional drugs that the Government intends to introduce evidence about at
trial, this does not change the actual offense charged in the indictment.  Therefore, there is no
likelihood that Glenmark would be found guilty of an offense different than the one charged.
For these reasons, Glenmark and Teva's constructive amendment arguments are not relevant and
the Court may, in fact, rely on the information that the Government set forth in its opposition in
deciding this motion.

drug trafficking crime.  *Id*. at *2.  Patel moved for misjoinder and severance of the murder count, arguing that he did not know about or participate in the murder and that the murder was a separate conspiracy altogether.  *Id*. at 1.  The Court disagreed and held that the counts were properly joined because "to prove [the murder count,] the Government w[ould] have to prove the [drug] conspiracy . . . to show that a drug trafficking crime occurred, and that [two of the defendants] used or carried a firearm during or in relation to that crime."  *Id*. at *2.  Further, the Court reasoned that there was a transactional nexus between the counts because they shared common actors, evidence, and temporal proximity.  *Id*.  Without their connection to the drug conspiracy, the defendant distributor and his associate would not have had the motivation nor circumstances to murder Olabode.  *Id*.  For these reasons, the Court denied Patel's motion for misjoinder and declined to sever the case.

Similarly, in this case, there is a clear "logical connection" and "transactional nexus" between the acts (or series of acts) of the defendants, regardless of the fact that Glenmark is not charged in Counts II and III.  Glenmark and Teva's agreement alleged in Count I to increase the price of certain generic drugs forms the basis for the following counts.  The alleged actions by Teva, Taro, and Sandoz in Counts II and III only followed Glenmark's initial price increase and seem to have been coordinated by Teva executives.  Each count and conspiracy occurred over the same span of time (between May 2013 and December 2015), involved the same actors and co-conspirators, were carried out through substantially similar means, violated the same statute, and shared the overall objective to fix generic drug prices in the United States.  Further, there will be much overlapping evidence at trial regarding all three counts, as the Government intends to proffer witness testimony and many documents that will provide evidence relevant to more than one of the charged conspiracies.

For these reasons, we are satisfied that there is a sufficient transactional nexus between the counts in this matter and that joinder was not improper.

**B.      Severance**

Glenmark alternatively argues that even if the Court does not sever this matter for misjoinder, we should still grant severance under Rule 14.  Rule 14(a) allows severance if a defendant can show there is a "serious risk that a joint trial would compromise [one of its] specific trial right[s] . . . or prevent the jury from making a reliable judgment about guilt or innocence."  *Riley*, 621 F.3d at 335.  This is a heavy burden for defendants to overcome, and Glenmark has not done so.  Glenmark fails to identify any "specific trial right" that would be compromised by a joint trial.  Rather, they simply make a variety of arguments on how they would be unfairly prejudiced by a joint trial.  However, the Third Circuit has made clear that "[m]ere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal."  *United States v. Hadaway*, 466 F. App'x 154, 157 (3d Cir. 2012) (citing *United States v. Reicherter,* 647 F.2d 397, 400 (3d Cir. 1981)).  The prejudice that Glenmark alleges may result from a joint trial is not so severe that it would "prevent the jury from making a reliable judgment about guilt or innocence."  None of Glenmark's arguments regarding severance is persuasive.

First, Glenmark argues that there is a substantial risk that the jury could find it guilty by association because it is likely to consider evidence against Glenmark that is only admissible against Teva.  This argument is unavailing for several reasons.  First, the Government represents that very little evidence in the joint trial would be probative of Glenmark's guilt, but not admissible against them.  Further, to the extent that there is any such evidence, a limiting instruction would cure any potential prejudice.  The Third Circuit has held that "[e]ven if a

defendant does establish prejudice by the joinder, severance is not necessarily required if the trial court, in its discretion, can cure the prejudice through a limiting instruction." *Zafiro*, 506 U.S. at 539.  That is the case here.  We presume that a jury will follow such limiting instructions and will be able to compartmentalize the evidence and issues as to different defendants.  *Savage*, 2012 U.S. Dist. LEXIS 179203, at \*30 (citing *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005)).  Glenmark has failed to demonstrate that a jury would be unable to do so in this case.

Second, Glenmark argues that the jury will be unable to appropriately weigh the evidence in this matter because it is complex.  Although this is a somewhat complex case involving anti-trust issues and price fixing conspiracies, it is simplified because there are only three counts against two defendants, and the two defendants do not have "markedly different degrees of culpability." *Zafiro*, 506 U.S. at 545 ("When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.").  Further, each of the three counts charge defendants with violations of the same statute.  These factors make this matter much simpler than cases where severance has been granted.

For example, while Glenmark points to *United States v. Islam*—where the court granted severance—as comparably complex to this matter.  *Islam* is easily distinguished.  No. 20-45, 2021 U.S. Dist LEXIS 18150, at \*1 (E.D. Pa. Jan. 29, 2021).  In *Islam*, the court severed the defendants who were charged with only two counts in a 22-count indictment.  *Id*.  The two defendants who were severed were substantially less culpable than the remaining defendants, having only been charged with accepting bribes, while the other defendants were charged with masterminding a complex RICO conspiracy.  *Id*. at \*9-11, 14.  That is not the case here. Glenmark and Teva have similar degrees of culpability.  Glenmark and Teva are both charged

with violations of the same law.  Further, according to the evidence the Government intends to proffer at trial, Glenmark was allegedly one of the first co-conspirators to approach the Teva representative about price fixing when it anticipated a raise in prices.  Though there may be *a* difference in the culpability levels of Glenmark and Teva due to the fact that Teva is charged with three counts and Glenmark is only charged with one, they do not bear "markedly different" levels of culpability and Glenmark "is not entitled to a severance merely because evidence against a co-defendant is more damaging that the evidence against the moving party."  *Somers*, 496 F.2d at 730.  For these reasons, the jury will be able to adequately compartmentalize the evidence presented against the different defendants when given an appropriate limiting instruction.

Finally, Glenmark argues that unfair prejudice is likely in a joint trial because of the vast amount of discovery in the case and the "gross disparity" in the amount of evidence between Glenmark and Teva.  Glenmark asserts that it will suffer "spillover prejudice" due to the accumulation of evidence against Teva and involving the other companies.  However, the Third Circuit has held that "it is difficult to conclude that there is a prejudicial spillover where," as here, "there is substantial independent evidence of a defendant's guilt."  *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989).  Further, the Government asserts that its presentation at trial will include significant amounts of overlapping evidence against Teva and Glenmark.  To the extent that there is evidence offered against only Teva on Counts II and III, a limiting instruction regarding the limited purpose for which it may consider certain evidence (e.g., that evidence relating to drugs Glenmark did not sell or conspire on shouldn't be considered against them) would cure any prejudice potentially caused by evidence admitted against Teva that does not relate to Glenmark.  *See, e.g.*, *Zafiro*, 506 U.S. at 536, 539-41 (holding that limiting instructions

sufficed to cure potential prejudice in four-defendant case involving drug conspiracy with overlapping evidence and antagonistic defenses); *Savage*, 2012 U.S. Dist. LEXIS 179203, at *9 (denying severance and determining that limiting instructions sufficient to overcome potential prejudice where one defendant was allegedly unaware of murders committed by other defendants).

In conclusion, we decline to sever this matter under Rule 14(a). [2] Any potential prejudice that may result to Glenmark from a joint trial does not outweigh the convenience of trying these co-conspirators together, surpass concerns of judicial efficiency, or overcome the strong presumption of trying charged defendants together. *See Zafiro*, 506 U.S. at 537. Moreover, any potential prejudice that may result can be cured by appropriate limiting instructions. Juries are presumed to be able to follow such instructions and appropriately compartmentalize the evidence. Glenmark has given us no reason to believe that would not be the case in this matter. Therefore, severance is not appropriate in this case under Rule 14(a). The joint trial with Teva and Glenmark will proceed.

## IV.   CONCLUSION

For the foregoing reasons, Glenmark's Motion for Misjoinder and Severance will be denied. An appropriate Order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[2] Glenmark also suggests that even if severance under Rules 8(b) and 14 is unwarranted, the Court should rely on its "case management authority" and "broad discretion" to nevertheless sever the case. For all the reasons stated in this memorandum, in conjunction with considering judicial economy concerns, it is best that Teva and Glenmark are tried together in this matter.