**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : |
| | : |
| v. | : |
| | : Criminal No. 2:20-cr-200-RBS |
| TEVA PHARMACEUTICALS USA, INC. | : |
| and GLENMARK PHARMACEUTICALS | : |
| INC., USA, | : |
| | : |
| Defendants. | : |

**DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S
REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR DISCLOSURE OF
EVIDENCE PRESENTED TO THE GRAND JURY AS TO "OTHER GENERIC DRUGS"**

**I.     INTRODUCTION**

Teva Pharmaceuticals USA, Inc.'s ("Teva's") Motion for Disclosure of Evidence Presented to the Grand Jury ("Motion") seeks disclosure of a limited amount of information (redacted as necessary to protect grand jury secrecy) because this information is critical to determine whether the Second Superseding Indictment ("SSI") is infirm.

The government's opposition to Teva's Motion is long on platitudes and short on reasoned analysis. This is because the government has no meaningful response to Teva's logical and limited request. First, the government contends that Teva is on a "fishing expedition." United States' Opp'n to Teva's Mot. for Disclosure of Evidence Presented to the Grand Jury ("Opp'n") at 1. To the contrary, Teva has made a showing of "particularized need" based on clear Third Circuit precedent. In *United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) (emphasis added), the Third Circuit made unmistakably clear that to assert a wrongful agreement under Section 1, "[t]he illegal object of a Sherman Act conspiracy must be identified in terms of an . . . effect upon commerce in a relevant market," and "while the *per se* rule proscribes inquiry into competitive effects, ***it does not excuse identification of relevant markets***." Accordingly, any failure to identify sufficiently a relevant market would be a legitimate basis to dismiss even a Section 1 claim. *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 435 (3d Cir. 1997).

Second, the government claims that, "granting the request would eviscerate the strong presumption that grand jury proceedings are conducted in secret," Opp'n at 3, but it ignores that Teva does not actually seek the identity of anyone who testified before the Grand Jury and specifically says that the government should redact such information. Mot. at 18–19. It also ignores that Teva's request is narrowly tailored to seek only that information necessary for it to address the specific concerns it has identified as to SSI: the extent to which the Grand Jury was presented

2

with evidence concerning generic drugs not specifically named in the SSI. Accordingly, the policy reasons supporting grand jury secrecy simply are not implicated by Teva's Motion, *see* Mot. at 18–19 (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)), and the government offers little more than inapplicable boilerplate in opposing it.

As discussed in Teva's Motion, there is good reason to believe that the SSI is infirm. The government's refusal to produce any Grand Jury transcripts is a tacit acknowledgement that the requested Grand Jury transcripts will support Teva's argument that the SSI is subject to a motion to dismiss. Teva's request is warranted to allow Teva—and, if necessary, the Court—to fairly examine these issues. Under the circumstances, the government should not be permitted to hide behind Rule 6(e) to avoid such disclosure.

## II.     ARGUMENT

The government makes two arguments—both baseless—in opposing Teva's argument that grand jury disclosure is necessary to determine whether the government adequately identified a relevant market for the Grand Jury. First, the government asserts, contrary to plain Third Circuit precedent, that by simply alleging a wrongful agreement among competitors, the government has no legal obligation to identify a relevant market. Opp'n at 4. Second, and implicitly conceding the weakness of its first argument, the government claims that it nevertheless has sufficiently identified the relevant market here as "generic drugs in the United States." *Id.* at 4 n.1. That argument fails as well, given that such a market definition is staggeringly overbroad and would include drugs far too different from each other to comport with economic reality. Finally, the government mischaracterizes Teva's narrow request in an effort to paint it as a threat to grand jury secrecy, but in the end, the policy reasons supporting grand jury secrecy are not implicated by Teva's Motion.

### A.     Third Circuit Precedent Requires Pleading a Relevant Market

In the government's view, it need only charge that the "conspirators were actual or potential horizontal competitors" who reached an alleged agreement in order to satisfy any definition of a relevant market. *Id.* at 5. Indeed, the government argues that in a *per se* case, the relevant market is irrelevant and the government need not even identify one. That proposition, however, is flatly contradicted by the Third Circuit's clear statement otherwise in *Sargent Electric*. Recognizing that *Sargent Electric* is relevant precedent, the government attempts, but fails, to undercut its import.

The government first argues that *Sargent Electric* actually stands for a proposition that there is no need to identify a relevant market in a *per se* case, but that proposition is contrary to the clear holding of the case. *Id.* Indeed, the Third Circuit repeatedly emphasized in *Sargent Electric* the importance of defining a relevant market consistent with economic reality. And it found that the district court had committed a "fundamental error" by "focusing on the common motive of fixing prices while disregarding the other essential element of a section 1 Sherman Act case, relevant market." *Sargent Electric*, 785 F.2d at 1130. The opinion is direct and concise:

> The illegal object of a Sherman Act conspiracy must be identified in terms of an intended or achieved effect upon commerce in a relevant market . . . . But while the per se rule proscribes inquiry into competitive effects, it does not excuse identification of relevant markets.

*Id.* at 1127. In other words, the government cannot gloss over the identification of a relevant market by simply alleging that horizontal competitors conspired to fix prices. There is thus nothing in *Sargent Electric* that actually supports the government's opposition.

The government's reliance on a case from outside the Third Circuit, discussing *Sargent Electric*, does not and cannot change that reality. The government cites *United States v. MMR Corp.*, 907 F.2d 489, 498 (5th Cir. 1990) to argue that *Sargent Electric* stood only "for the unremarkable proposition that an agreement not to compete between two parties who are not . . .

4

competitors is meaningless." Opp'n at 5. But that interpretation of *Sargent Electric* ignores the plain language of the opinion, quoted above, in which the Third Circuit refused to "excuse" market definition even in *per se* cases. And even if that interpretation of *Sargent Electric* were correct, it still would support Teva's Motion, because while Teva and its alleged coconspirators in the SSI might compete as to <u>certain</u> generic drugs, they plainly do not compete as to <u>every</u> generic drug (as Teva manufacturers hundreds of generic drugs). For example, Apotex, who in Count One the government alleges conspired with Teva, did not market or sell <u>any</u> of the twenty-one "newly identified drugs," *see* Mot. at 4, the government now claims were part of that conspiracy. To quote *MMR Corp.*, therefore, it would be "meaningless" for the government to allege "an agreement not to compete" among Teva and Apotex with respect to these drugs, and yet that is precisely what the government appears to be alleging here, inconsistent with the evidence presented to the Grand Jury.

The other cases cited by the government are no more helpful to its argument. *Ohio v. Am. Express Co.* says in a footnote that in some instances of alleged horizontal agreement, a "precise" definition of the market need not be made, but nowhere did the Supreme Court altogether excuse antitrust plaintiffs—even plaintiffs alleging horizontal agreements—of their obligation to identify a relevant market. 138 S.Ct. 2274, 2285 n.7 (2018). The *Ohio* Court was also clear that a "relevant market is defined as the area of effective competition, [and] [t]ypically this is the arena within which significant substitution in consumption or production occurs." *Id.* at 2285 (internal quotation marks and citations omitted). The Court went on to note that, "courts should 'combin[e]' different products or services into a 'single market' when 'that combination reflects commercial realities.'" *Id.* (quoting *United States v. Grinnell Corp.*, 384 U. S. 563, 572 (1966)). There is not "significant

substitution" among the vastly different drugs lumped together by the government here and, as such, making them all part of a single relevant market is anything but commercially realistic.

The government's reliance on *SmithKline Beecham Corp. v. Eastern Applicators, Inc.*, CIVIL ACTION NO. 99-CV-6552, 2002 U.S. Dist. LEXIS 10061 (E.D. Pa. May 24, 2002), and *Rossi v. Standard Roofing,* 156 F.3d 452 (3d. Cir. 1998), is also misplaced. The government cites *SmithKline* for the notion that, under a *per se* analysis, "the second and third elements [relevant market and anticompetitive effects] are presumed to be satisfied" and, *Rossi* for the argument that a *per se* analysis means "relevant markets and anticompetitive effects' are conclusively presumed satisfied." Opp'n at 5 n.2. The government badly misreads both cases. The full quotes referenced in each case stand merely for the uncontroversial—and for purposes of this Motion, irrelevant—point that in a *per se* case, it is presumed "that the combination or conspiracy produced adverse, anti-competitive effects ***within the relevant product and geographic markets***." *SmithKline*, 2002 U.S. Dist. LEXIS 10061, at *6 (quoting *Rossi*, 156 F.3d at 454) (emphasis added).  So while anti-competitive ***effects*** may be presumed under a *per se* analysis, the relevant market still needs to be defined.

 The government may wish it were otherwise, but the bottom line is that *Sargent Electric* is clear and binding precedent in the Third Circuit. To allege a criminal Section 1 violation the government must identify a relevant market, and review of the requested Grand Jury transcripts is necessary to determine whether the SSI is infirm.

> **B.     The Government's Back-up Argument that "Generic Pharmaceuticals" Constitutes a Relevant Market is Nonsensical**

Though the government refuses to concede that *Sargent Electric* is good law, it nevertheless claims to have satisfied this precedent by alleging a "relevant market" of "generic drugs in the United States." Opp'n at 4 n.1. For this reason, the government asserts that Teva has

6

no need to obtain the limited Grand Jury transcripts it seeks, but that argument is premised on faulty foundations.

To begin, the SSI itself does not allege a relevant market of all generic drugs. This is an after-the-fact argument made up out of whole cloth. Nor could the SSI allege such a relevant market in any event, because it would not make any economic sense. Relevant markets are markets composed of goods that are interchangeable to the consumer. *See* Mot. at 9. There is no argument consistent with economic reality to support a relevant market that encompasses all "generic pharmaceuticals in the United States."

Tellingly, nowhere does the government's opposition discuss the numerous cases Teva cited making clear that products or services must be reasonably interchangeable to be fairly considered as part of a relevant market. *See Id.* ("[C]ourts examining [interchangeability] in the context of drugs often limit those product markets to a single molecule (a brand name drug and its generic alternative) or at most to drugs used in the same therapeutic area." (citing *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 436 (3d Cir. 2016); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 389 (D. Mass. 2013)); *SmithKline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056, 1065 (3d Cir. 1978) (rejecting a defined product market where "there is neither appropriate interchangeability, price sensitivity, nor cross-elasticity of demand" among the products included). Apparently, in the government's view, just because the supposed conspirators each sold *some* types of generic drugs, the relevant market for the conspiracies alleged is *all* generic drugs in the United States. This premise is divorced both from basic economics and from common sense, because it ignores the fact that generic drugs (including those at issue here) vary widely in the conditions they treat and are anything but "interchangeable." It is precisely for this reason that not a single court tasked with defining a relevant market in the pharmaceutical

industry has come even close to supporting the government's apparent position here: that a relevant market can include all generic drugs, no matter what condition they treat or purpose they serve. As the Third Circuit put it in *Sargent Electric*, "[a]n agreement 'to rig bids wherever and whenever possible' is meaningless for Sherman Act purposes unless there are in the real world of the marketplace some 'whens' and 'wheres.'" 785 F.2d at 1127. The government's proposed relevant market is so grossly overbroad and disparate that it cannot comport with the "real world of the marketplace."[1]

### C. The Government Ignores Teva's Second Argument in Support of Disclosure

The government offers virtually nothing in response to Teva's second reason supporting a particularized need for limited Grand Jury transcripts. For all the reasons discussed in Teva's initial brief, Mot. at 13–17, there is a legitimate concern that the government presented a different case to the Grand Jury than the one it intends to present to the trial jury. Teva needs to examine the relevant Grand Jury testimony to see if the government actually presented evidence of its newly identified drugs and newly identified conspiracies. Only through that process can Teva assess the appropriateness of a motion to dismiss or otherwise remedy the flaws in the Grand Jury process.

Rather than address this argument, the governments portrays it as a premature claim of a constructive amendment. Opp'n at 7. While the prospect of a constructive amendment at trial certainly looms given the government's actions to date, it is not Teva's only concern. Whether the government presented evidence to the Grand Jury concerning these newly identified drugs and conspiracies is needed <u>today</u> because that information may be the basis for a motion challenging

---

[1] For example, Teva alone manufactured and sold at least several hundred different generic drugs in the United States during the relevant period, and many of its alleged co-conspirators had equally broad portfolios. Can all of those distinct generic drugs really be regarded as part of the same relevant market, just because the competitors who sell them may compete as to some small fraction of the drugs? That is inconsistent with the law and economic reality.

8

the SSI now, not during or after trial. The Constitution of the United States does not permit the government to present a different case to a petit jury than the one it presented to the grand jury.

### D. The Government Seeks to Usurp the Role of the Court

The government is apparently so concerned about disclosing what evidence it did *or* did not present to the Grand Jury that effectively it takes that position that the Court should have no role in determining the validity of the SSI. The government argues that because the SSI is, in its opinion, "facially valid," any motion for the disclosure of the Grand Jury minutes is effectively moot. Opp'n at 6–7. Respectfully, that determination is the province of the Court, not the government.

Under Rule 6(e), the defense must make a showing of particularized need, and then the court must balance that need against the concern with grand jury secrecy. That is just what Teva has done in its Motion. The government, however, believes it can circumvent the process simply by using the magic words "conspiracy" and "horizontal competitors" to create an indictment immune from further scrutiny of the evidence actually presented to the Grand Jury. To that end, the government writes, "the allegedly fatal defect [concerning a relevant market] relied upon in Teva's motion ***bears no relationship to what occurred before the grand jury***." *Id.* at 6. (emphasis added). But how does Teva or the Court know that? The government cannot simply assert that the Grand Jury process was perfect to end the inquiry. The government's position would effectively prevent any defendant from ever accessing grand jury transcripts, thereby nullifying Rule 6(e) altogether. The point of Teva's Motion is for it or the Court, *in camera*, to review a small part of "what occurred before the grand jury" and determine whether the circumstances warrants further motion practice. That the government has itself already concluded that no remedy is needed is not determinative of the issue.

9

### E. Teva's Request Poses No Threat to Grand Jury Secrecy

The government breathlessly argues that granting Teva's request will eviscerate the strong presumption that grand jury proceedings are secret. But grand jury secrecy is meant to protect the identity of witnesses testifying before the grand jury so that they may testify honestly without fear of publicity or reprisal. *See* Mot. at 7 (citing *Douglas Oil*, 441 U.S. at 222). It does not provide the government with immunity from inquiry in a case like this one, where the circumstances strongly suggest that the Grand Jury transcripts will support a meritorious motion to dismiss.

Moreover, it bears repeating that Teva ***does not*** seek the identity of any witness who testified before the Grand Jury and requests that the government redact any identifying information. Teva merely seeks transcripts or exhibits that relate to the twenty-one additional drugs the government identified and any other generic drugs not identified in the SSI because those are the transcripts are relevant to potential dispositive motions.

### III. CONCLUSION

For the foregoing reasons and those discussed in its initial Motion papers, Teva respectfully requests that, pursuant to Federal Rule of Criminal Procedure 6(e), the Court order the government to disclose, or allow inspection of:

> *the specific portions of any testimony or exhibits presented to the Grand Jury concerning the twenty-one newly identified drugs the government identified in its letter of April 27, 2021 and any other generic drugs not identified in the Second Superseding Indictment, redacted to remove the identities of any witnesses who testified before the Grand Jury.*

In the alternative, the Court should order an *in camera* inspection of such evidence to allow the Court to consider the concerns with the Grand Jury presentation raised by Teva in bringing this Motion.

Dated: April 26, 2022                           Respectfully submitted,

| | |
|---|---|
| Mark P. Ressler | */s/ R. Stephen Stigall* <br> R. Stephen Stigall (PA ID 78748) <br> David L. Axelrod (PA ID 323792) |
| KASOWITZ BENSON TORRES LLP <br> 1633 BROADWAY <br> NEW YORK, NY 10019 <br> 212-506-1700 <br> mressler@kasowitz.com | Elizabeth Weissert (PA ID 322931) <br><br> BALLARD SPAHR LLP <br> 1735 Market Street, 51st Floor <br> Philadelphia, PA 19103 <br> Telephone: (215) 665-8500 <br> sttigalls@balladspahr.com <br> axelrodd@balladspahr.com <br> weisserte@ballardspahr.com <br><br> *Attorneys for Defendant Teva Pharmaceuticals USA, Inc.* |

**CERTIFICATE OF SERVICE**

I, R. Stephen Stigall, do hereby certify that I have served a true and correct copy of the foregoing document upon all counsel/parties by electronic filing on April 26, 2022. This document has been filed electronically and is available for viewing and downloading from the ECF system.

　　　　　　　　　　　　　　　　　　　　　*/s/ R. Stephen Stigall*
　　　　　　　　　　　　　　　　　　　　　R. Stephen Stigall