IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 20-200 |
| : | |
| TEVA PHARMACEUTICALS USA, INC. : | |
| and GLENMARK PHARMACEUTICALS., : | |
| USA : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                   **OCTOBER 13, 2022**

This matter, stemming from an alleged conspiracy to fix and maintain prices of generic drugs in the United States, involves a request by Defendant Teva Pharmaceuticals USA, Inc. to pierce grand jury secrecy and disclose evidence presented to the grand jury on "other generic drugs" not explicitly named in the Second Superseding Indictment (SSI). Teva's Motion for Disclosure of Evidence Presented to the Grand Jury as to "Other Generic Drugs" (ECF No. 153) is opposed by the Government. For the reasons set forth herein, the Motion is denied.

**I.      BACKGROUND**

Defendants Glenmark and Teva, along with non-parties Apotex, Taro, and Sandoz, are alleged to have participated in a conspiracy to fix the price of multiple generic drugs in the United States. On August 25, 2020, a grand jury issued the three-count SSI against Defendants Glenmark and Teva. (SSI ¶¶ 21-57, ECF No. 28.) The SSI charges Teva with three counts. Count One charges Teva with conspiring with Glenmark and Apotex "to increase and maintain prices of pravastatin and other generic drugs sold in the United States." (*Id*. at ¶ 20.) Count Two charges Teva with conspiring with Taro Pharmaceuticals U.S.A., Inc. (Taro) "to allocate

customers and rig bids for, and stabilize, maintain, and fix prices of" certain generic drugs. (*Id*. at ¶ 36, 39.)  Count Three charges Teva with conspiring with Sandoz, Inc. (Sandoz) "to allocate customers and rig bids for, and to stabilize, maintain, and fix prices of" certain generic drugs. (*Id*. at ¶ 48, 53.)

In April of 2021, the Government provided Teva with a list of additional generic drugs beyond those specifically named in the SSI on which the Government may introduce evidence against Teva at trial.  (Def. Br. in Supp. Motion for Limited Disclosure, ECF No. 153, Ex. 2, at 2.)  The Government has disclosed a variety of information and provided extensive discovery on these other generic drugs to Teva throughout the discovery process.

Teva now brings this Motion for Disclosure of Evidence Presented to the Grand Jury as to "Other Generic Drugs," arguing that the Government's intent to introduce evidence at trial of drugs not referenced in the SSI suggests irregularities in the grand jury process, such that the SSI may be subject to dismissal.

## II.   LEGAL STANDARDS

"[T]he standard practice since approximately the 17th century has been to conduct grand jury proceedings in secret."  *Giles v. California*, 554 U.S. 353, 371 (2008); *see also Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (noting that "grand jury proceedings are subject to strict secrecy requirements").  Federal Rule of Criminal Procedure 6(e) recognizes this tradition of secrecy, and seeks to preserve it, "creating a general rule of confidentiality for all matters occurring before the grand jury."  *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997).  Rule

6(e) applies to anything that reveals what occurred before the grand jury, including exhibits and testimony. *Id.*

Rule 6(e) contains several exceptions to grand jury secrecy. One such exception outlined in Rule 6(e)(3)(E)(ii) authorizes the court to disclose a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) must establish that "irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Bunty*, 617 F. Supp. 2d 359, 372 (E.D. Pa. 2008). This must be done "based on particularized and factually based grounds." *Id*; *see also United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) (emphasizing that to obtain grand jury materials, a party must show "a particularized need for that information which outweighs the public interest in secrecy") (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1957)). The defendant's request must be "structured to cover only material so needed." *In re Grand Jury Matter (Cantania)*, 682 F.2d 61, 64 (3d Cir. 1982) (quoting *Douglas*, 441 U.S. at 222)).

Once the defendant has demonstrated a particularized need for disclosure, the court "must weigh the competing interests and order so much disclosure as needed for the ends of justice." *McDowell*, 888 F.2d at 289 (quoting *Cantania*, 682 F.2d at 62). The judge is afforded considerable discretion when balancing these competing interests. *Id.*; *Bunty*, 617 F. Supp. 2d at 372 ("The decision to permit disclosure [of grand jury transcripts] is within the discretion of the trial court judge who must assess whether the need for disclosure overbalances the requirements of secrecy.") (quoting *United States v. Mahoney*, 495 F. Supp. 1270, 1272 (E.D. Pa. 1980)).

**III.   DISCUSSION**

In support of its Motion, Teva argues for disclosure under Rule 6(e)(3)(E)(ii), identifying two purported "irregularities" in the grand jury proceedings which, it contends, may create a basis for dismissal. First, Teva argues that the Government's failure to define a relevant market in the SSI is an irregularity which may warrant dismissal. Teva's second proffered "irregularity" is its belief that the Government presented insufficient to the grand jury on "other generic drugs" not explicitly listed in the SSI. Teva asserts that if the Government did not present evidence on these other drugs to the grand jury, then the SSI is invalid and would be subject to a motion to dismiss. For the reasons set forth below, both of these arguments fail, and the Motion will be denied.

    A.   <u>Definition of a Relevant Market</u>

Teva argues that the Government's failure to define a relevant market in the SSI may be a basis for dismissal. To establish a violation of Section 1 of the Sherman Act, it must be proven that (1) the defendants contracted, combined or conspired among each other; (2) the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) the plaintiffs were injured as a proximate result of that conspiracy. *Rossi v. Standard Roofing*, 156 F.3d 452, 465 (3d Cir. 1998). However, some restraints on trade have such little redeeming competitive value that they are deemed *per se* unreasonable. *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 395 (3d Cir. 2015). Horizontal price fixing agreements—where the concerted action is price-fixing or bid-rigging—are the archetypal

example of such a practice and are considered *per se* unlawful.[1]  *Id.*; *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018).  This matter involves such a case, as the SSI alleges a horizontal price fixing scheme, where Defendants agreed to fix prices and rig bids of generic drugs.

When the *per se* analysis applies, prongs two (adverse effects in the relevant market) and three (illegality of the agreement) are presumed satisfied and need not be addressed.  *Rossi*, 156 F.3d at 465.  Therefore, the Third Circuit has held that in *per se* cases, it need only be shown that (1) the defendants conspired among each other and (2) that this conspiracy was the proximate cause of the plaintiff's injury.  *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d at 395.  Accordingly, the Government argues that a "relevant market" does not need to be defined in *per se* cases.  We disagree.  In fact, the Third Circuit has specifically held that "while the *per se* rule proscribes inquiry into competitive effects, it does not excuse identification of relevant markets . . . An agreement 'to rig bids wherever and whenever possible' is meaningless for Sherman Act purposes unless there are in the real world of the marketplace some 'whens' and 'wheres.'" *United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986).  However, the Supreme Court has recently stated that in cases of horizontal price fixing schemes, a relevant market need not be "precisely define[d]." *Am. Express Co.*, 138 S. Ct. at 2285 n.7.  Other courts have interpreted the burden of defining a relevant market in *per se* cases as "diminished," requiring only demonstration of the "rough contours of a relevant market.  *See, e.g.*, *Republic Tobacco Co.*

---

[1] For the purpose of antitrust law, horizontal competitors are participants at the "same level of the market structure." *United States v. Topco Assoc., Inc.*, 405 U.S. 596, 608 (1972). Agreements to fix prices or rig bids among horizontal competitors are judged by the *per se* standard, whereas agreements among vertical market participants, such as a manufacturer of a product and its distributor, are generally judged by a different standard. *Id.*

*v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004); *Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, No. 11-1290, 2015 U.S. Dist. LEXIS 36588, at *26 (D.N.J. Mar. 24, 2015).

Therefore, while it is clear that *per se* cases do require some definition of a relevant market, we are satisfied that the burden to do so is less stringent than in non-*per se* cases, due to the nature of horizontal agreements. *See Sargent Elec. Co.*, 785 F.2d at 1127 ("To some extent, of course, a horizontal agreement tends to define the relevant market, for it tends to show that the parties to it are at least potential competitors. If they were not, there would be no point to such an agreement. Thus its very existence supports an inference that it would have an effect in a relevant market.") Here, the Government has met this burden by specifying the timeframe, geographical area, and various generic drugs which are the subject of the alleged horizontal price-fixing and bid-rigging agreement between Defendants. Specifically, the SSI indicates that the agreements at issue here occurred between May of 2013 and December 2015. (SSI ¶¶ 20, 36, 48.) It also states that the Defendants agreed to price-fix and rig bids on "generic drugs sold in the United States," which they both sold. (*Id.* at ¶¶ 20-22, 36, 48.) Even more specifically, the SSI lists by name many drugs which were the subject of this conspiracy: pravastatin (*id.* at ¶ 22); carbamazepine tabs and chews, medications used to prevent and control seizures and treat bipolar disorder; clotrimazole topical solution 10%, a medication used to treat a variety of skin conditions; etodolac immediate release and extended release tablets, medications used to treat pain and arthritis; fluocinonide cream, emollient cream, gel, and ointment, medications used to treat skin conditions; warfarin, a medication used to treat and prevent blood clots (*id.* at ¶ 39); tobramycin inhalation solution (*id.* at ¶ 51); todolac immediate release tablets, a medication used to treat pain and arthritis; nadolol, a beta-blocker used to treat high blood pressure and prevent chest pain; temozolomide, a chemotherapy drug used to treat brain cancer; and tobramycin, an

antibiotic used in the treatment of cystic fibrosis (*id*. at ¶ 53), among other generic drugs sold in the United States. The SSI clarifies the "whens and wheres" of the alleged conspiracy, and the "rough contours" of the relevant market have been defined. *Sargent Elec. Co.*, 785 F.2d at 1127. Therefore, because Defendant has not met its heavy burden of showing a substantial likelihood of gross or prejudicial irregularities in the grand jury proceedings, we refuse to pierce the secrecy of the grand jury.

      B.      "Other Generic Drugs"

Teva's second identified "irregularity" is its belief that the Government presented insufficient evidence to the grand jury on "other generic drugs." Specifically, Teva asserts that it has a particularized need for disclosure so it can determine whether bringing a motion to dismiss based on failure to present such evidence is appropriate, consistent with its rights under the Fifth Amendment. This argument is contrary to well-established law and therefore fails.

The law is clear that an indictment cannot be challenged based on inadequacy or insufficiency of the evidence presented to the grand jury. *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Doe*, 429 F.3d 450, 453 (3d Cir. 2005) (it is the grand jury's job to determine "how much information is enough" to find probable cause for an indictment); *United States v. Katzin*, 707 F. App'x 116, 120 (3d Cir. 2017) (affirming refusal to strike the indictment based on challenges to sufficiency of the evidence before the grand jury); *United States v. Totoro*, No. 15-291, 2017 U.S. Dist. LEXIS 117371, at *10 (E.D. Pa. July 27, 2017) ("a defendant is not entitled to challenge an indictment on [the] basis" of "sufficiency of the Government's evidence at the grand jury proceeding."). Therefore, Teva's challenge to the sufficiency of the evidence presented to the grand jury on "other generic drugs" is not an "irregularity" in the grand jury proceeding, and does not create a basis for dismissal of the SSI.

*United States v. Walton*, No. 04-508-03, 2005 U.S. Dist. LEXIS 28331, at *3 (E.D. Pa. Nov. 16, 2005) ("Courts generally refuse to dismiss indictments based on insufficiency of the evidence presented to the grand jury.").

Further, it is clear that the Fifth Amendment does not support Teva's request. As the Supreme Court has stated,

> [I]f indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

*Costello*, 350 U.S. at 636. Rather, "an indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Id*. Accordingly, all that we must do here is confirm that the SSI was indeed valid on its face.

The Third Circuit has held that an indictment is facially sufficient if it: "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). These requirements are generally satisfied if an indictment "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Id*. The SSI is clearly sufficient here, as it contains each of these elements. First, the SSI informs Teva of the statute it is charged with violating, Section 1 of the Sherman Act (15 U.S.C. § 1). (SSI ¶ 20, 36, 48.) The second and third requirements for an indictment are satisfied by "a factual orientation that includes a specification of the time period of the alleged offense." *United*

8

*States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013).  Here, the SSI contains a detailed recitation of the facts and alleged acts by Teva and its co-conspirators in Counts I, II, and III.  (*Id*. at ¶ 21-31, 36-41, 48-54.)  This factual recitation also includes the time period during which the violations occurred.  (*Id*. at ¶ 20, 36, 48.)  Therefore, the SSI is facially sufficient.  Accordingly, Teva's attempt to challenge it on the basis of insufficient evidence presented to the grand jury must fail.

Second, Teva has also not given a "particularized and factually based" argument for disclosure.  Teva's arguments are wholly based on speculation and are not grounded in fact.  Teva asserts that it is "very likely" that the newly-named drugs "do not fit squarely into the framework of the SSI's current allegation."  (Def. Br. at 14.)  However, Teva gives no "particularized" or "factual" support for these assertions.  Rather, it simply posits that if such evidence had been presented, "surely the government would actually have named those drugs . . . in the SSI."  (*Id*. at 13.)  This argument is circular—essentially asking the court to open grand jury proceedings to allow it to search for a basis for dismissal of the SSI—and is based on nothing more than speculation.  This is clearly the type of scenario that Rule 6(e)(3)(E)(ii) protects against by requiring a party seeking to pierce grand jury secrecy to support its request to do so in a "particularized and factual" manner.

For these reasons, Teva does not meet the high bar for disclosure of grand jury proceedings laid out in Rule 6(e)(3)(E)(ii), and the Motion is denied.

**IV.     CONCLUSION**

Teva has not met its burden under Rule 6(e)(3)(E)(ii) for disclosure of grand jury materials, as it has failed to make a "particularized and factually based" argument that there were "irregularities in the grand jury proceedings which may create a basis for dismissal of the

9

indictment." For this reason, Teva's Motion for Limited Disclosure of Evidence Presented to the Grand Jury as to "Other Generic Drugs" is denied.

                                        **BY THE COURT:**

                                        ***/s/ R. Barclay Surrick***
                                        **R. BARCLAY SURRICK, J.**